**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**ANGELIQUE BANNA** **PLAINTIFF**

**VS.** **No. 4:26-cv-00318 PSH**

**FRANK BISIGNANO, Commissioner,**
**Social Security Administration** **DEFENDANT**

**ORDER**

Plaintiff Angelique Banna ("Banna") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Bisignano") to deny her claim for Supplemental Security Income ("SSI"). Banna contends the Administrative Law Judge ("ALJ") erred in determining her residual functional capacity ("RFC") by failing to set forth the total limiting effects of all of her impairments, including her pain-related deficits and the diagnosis of chronic pain syndrome, and in assessing her ability to maintain pace and complete tasks. Bisignano states substantial evidence supports the ALJ's decision that Banna was not disabled during the relevant period. Bisignano is correct, and the ALJ's decision is affirmed for the reasons set forth below and the case dismissed.

The parties ably summarized the medical records and the testimony given at

the administrative hearing, which was conducted telephonically on January 13, 2025. (Tr. 67-98). The Court has carefully reviewed the record to determine whether there is substantial evidence to support Bisignano's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from October 22, 2021,[1] when the application was filed, through February 10, 2025, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questions posed by the ALJ,[2] Banna stated she was 52, lived with relatives, including her 30 year old son, stood 5'9" and weighed 357. She completed tenth grade, and her only income is from her son's disability payments and food stamps. She last worked in 2004, and has not sought work recently.

She described barriers to performing full-time work: inability to sit due to back problems (degenerative disc disease, bulging discs causing spinal stenosis, and arthritis); foot and knee problems; carpal tunnel syndrome diagnosis; numbness and pain in her hands; headaches; lightheadedness; dizziness; nausea; inability to write; chronic sinusitis; asthma; inability to stand, sit, or walk for very long; use of a walker; panic attacks since 2020 with flu-like symptoms; PTSD; inability to be around other people; stress dealing with relatives with whom she

---

[1] The application, filed in October 2021, alleged Banna became disabled on February 1, 2004. (Tr. 238).

[2] Banna attended the hearing without a lawyer. "No, I don't really need one. I

lives; stress with finances; stress with trying to lose weight and eat healthy; and obsessive compulsive disorder ("OCD").

Banna described "burning of the nerves" as the only treatment received for her lower back problems. (Tr. 80). That treatment, according to Banna, did not "really do much." *Id.* No treatment had been received for neck problems. A steroid shot in her wrist was the only treatment for carpal tunnel syndrome. Banna uses an inhaler daily for asthma and chronic sinusitis. Banna indicated she did not like taking narcotics, and her only medications at the time of the hearing were to address acid reflux and irritable bowel syndrome, and acetaminophen when needed. She estimated it had been more than a year since her last injection for her knee. Regarding her mental health, Banna stated she was taking no medication and had not had therapy "in a few months." (Tr. 84). She described blurry vision, burning eyes, and watery eyes, addressed by wearing glasses which allowed her to "see pretty good." (Tr. 84). She stated she had not driven for more than two years and does not possess a license. Banna uses her walker due to weak ankles, weak bones, and knee and back problems. When asked whether her physical or mental impairments were more incapacitating Banna replied, "more physical but mental is probably close." (Tr. 91). Banna professed no mental barriers with paying bills and keeping a house but "my problem is with higher math stuff." (Tr. 92).

---

mean, there's really nothing they can do that I can't do really." (Tr. 70-71).

Tara Overstreet ("Overstreet"), a vocational expert, testified. The ALJ asked Smith to consider a hypothetical worker of Banna's age, education, and experience, who could work the light exertional level with the following restrictions: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional stooping, crouching, kneeling, and crawling; avoidance of concentrated exposure to excessive vibration, unprotected heights, and hazardous machinery; occasional exposure to irritants, such as fumes, odors, dusts, gases, poorly ventilated areas, extreme temperatures, wetness, and humidity; can frequently handle and finger bilaterally; can use judgment to make simple work-related decisions; can maintain concentration, persistence, and pace for simple tasks; can understand, carry out and remember simple instructions and procedures; and can adapt to changes in the work setting, which would be simple, predictable and easily explained.

Overstreet testified that such a hypothetical worker could perform the jobs of marker and router. If the first hypothetical question were altered to a sedentary job requiring the use of a walker for ambulation, Overstreet testified no jobs were available.

Also, Overstreet stated no jobs would be available if the hypothetical worker was unable to complete work tasks in an acceptable timeframe due to pain.

Finally, Overstreet found no jobs available if the hypothetical worker could sit for two hours but then would need to lie down for two hours. (Tr. 92-97).

*The ALJ's Decision*

Following the administrative hearing the ALJ, in his February 10, 2025, decision, determined Banna had numerous severe impairments: morbid obesity; cervical spondylosis; degenerative disc disease of the lumbar spine; lumbago; degenerative joint disease of the left knee; osteoarthritis; ANA positive; fibromyalgia; polyarthralgia; asthma; bilateral carpal tunnel syndrome; pain disorder; adjustment disorder with mixed anxiety and depression; borderline personality disorder; depressive disorder; and posttraumatic stress disorder (PTSD). The ALJ found kidney cancer was not a medically determinable impairment, citing the absence of objective medical abnormalities.

The ALJ found Banna did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ specifically addressed whether Banna met Listings 1.15 (disorders of the skeletal spine), 1.16 (lumbar spinal stenosis), 1.18 (abnormality of a major joint), 3.03 (asthma), and 12.04, 12.06, 12.08, and 12.15 (mental impairments). As part of the analysis of mental impairments the ALJ considered the "paragraph B" criteria, rating Banna in four broad areas of functioning, finding she had: (1) a moderate limitation in

understanding, remembering or applying information; (2) a mild limitation in interacting with others; (3) a moderate limitation with regard to concentrating, persisting or maintaining pace; and (4) a mild limitation in adapting or managing oneself. Since Banna was not markedly limited in two of these areas, or extremely limited in one area, the "paragraph B" criteria were not satisfied.

The ALJ also found the "paragraph C" criteria were not met, finding insufficient evidence of the existence of disorders over a period of at least two years and evidence of medical treatment, mental health therapy, psychosocial support, or a highly-structures setting that is ongoing and diminishes the symptoms and signs of her mental disorder and marginal adjustment.

The ALJ also determined that Banna's fibromyalgia was a medically determinable impairment and that her obesity, while severe, was not of such severity as found in any listing.

The ALJ determined Banna had the RFC to perform light work with the restrictions which mirrored those in the first hypothetical question posed to Overstreet.

The ALJ thoroughly reviewed Banna's testimony at the administrative hearing and her June 2023 Function Report. The ALJ also considered Banna's complete medical history, beginning in September 2005. The ALJ summarized medical treatment received for her physical impairments from July 2020 forward,

noting Banna was seen on a somewhat consistent basis from July 2020 through September 2021 (seven medical encounters during this time for a variety of ailments).[3]

Banna was next seen in January 2023 when she presented for a consultative examination by an APRN. The ALJ described further treatment in 2023, including six visits in May, and multiple visits in June and July. Also noted was a neurosurgery appointment in August and a December routine visit with her family physician.

The ALJ next addressed medical care Banna received for mental impairments, noting limited treatment prior to June 2023. In March 2023, she was seen for a psychological consultative examination by Dr. Samuel B. Hester ("Hester"). In June, Banna began seeing a licensed associate counselor ("LAC"). In July, she was seen for depression and began taking Sertraline. The ALJ noted Banna stopped taking Sertraline and, in March 2024, was prescribed Bupropion. In May 2024, Banna was seen by Andrea Shea Stillwell, Psy.D., ("Stillwell"), for a psychological evaluation. The ALJ detailed Stillwell's findings, including the full scale IQ score of 76 obtained by Banna. Banna was again seen in May and June 2024, and participated in therapy sessions in June and July.

The ALJ determined Banna's impairments could reasonably be expected to

---

[3] Banna was seen in July and October 2020, in January, March, twice in August,

cause her symptoms. However, the ALJ found her statements regarding the intensity, persistence and limiting effects were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 50).

The ALJ addressed the opinion evidence of the state agency consultants, the APRN's January 2023 report, and the findings of Hester and Stillwell.

The ALJ found Banna had no past relevant work. Relying upon Overstreet's expert testimony, the ALJ concluded that there were jobs which Banna could perform, and she was not disabled. (Tr. 33-59).

*Analysis*

Banna's claims all target the RFC assessment made by the ALJ. Generally, the RFC need not mirror the findings of any one physician, as the ALJ is not bound to choose any one physician and adopt his/her findings as the appropriate RFC. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). As part of this process the ALJ is required by the revised regulations to assess the persuasiveness of medical opinions, considering and discussing, at a minimum, the supportability and consistency of the opinions. 20 C.F.R. § 416.920c.

---

and September 2021.

The specific RFC arguments are addressed below:

*ALJ failed to properly analyze Banna's chronic pain syndrome*

Banna faults the ALJ for his consideration of her chronic pain syndrome, alleging the ALJ merely mentioned chronic pain syndrome but failed to specifically find this to be a medically determinable impairment, and failed to find it to be severe, at Step 2 of the sequential evaluation.

This argument fails for three reasons. First, both Banna and Bisignano agree that Step 2 errors are "generously harmless." Doc. No. 4, page 15. This is so because the sequential evaluation continues so long as one severe impairment exists at Step 2. 20 C.F.R. § 416.920(a)(4)(ii), (c). Here, the ALJ determined Banna had sixteen severe impairments, requiring the sequential evaluation to proceed.

Second, the ALJ thoroughly considered both her subjective statements and the medical treatment for her impairments, including complaints of knee, back, hip, neck, and wrist pain. Even if "chronic pain syndrome" had been listed as the seventeenth severe impairment, the ALJ's decision was an appropriate and detailed assessment of Banna's pain allegations.

The third and final reason this argument fails is that "pain disorder" was a severe impairment found by the ALJ. While "pain disorder" is not synonymous with "chronic pain syndrome" the essence of both designations is pain which

inhibits Banna's ability to perform work activities. The ALJ properly considered these allegations, and there is no merit to this claim.

*ALJ failed to properly assess the findings of the state agency consultants*

Banna faults the ALJ's consideration of the state agency consultants' conclusions. Specifically, she cites the May 2024 findings of Dr. Steven Arkin ("Arkin"), who noted allegations of bipolar, manic depression, asthma, panic attacks, carpal tunnel, and leg issues, and acknowledged her subjective statements regarding pain ("all day every day I'm in pain all over body pain"). (Tr. 124). Arkin assessed Banna with three medically determinable impairments (lumbago, left knee osteoarthritis, and obesity) and, citing her daily activities and lack of medical evidence, found she was not disabled. The ALJ addressed Arkin's findings alongside the findings of Dr. Ken Murphy ("Murphy"), another state agency consultant. Murphy opined that Banna possessed the RFC for a full range of light work while Arkin added restrictions similar to those ultimately assessed by the ALJ. The ALJ found the opinions of Murphy and Arkin "partially persuasive because each was somewhat supported and consistent with the medical record as a whole." (Tr. 51). Banna fails to demonstrate any error in the ALJ's analysis of the findings of Murphy and Arkin, and the fact that the ALJ's RFC mirrored Arkin's RFC is not in itself erroneous.

*ALJ failed to properly consider the findings of Hester and Stillwell, including their findings regarding Banna's ability to sustain tasks*

Hester performed a consultative examination in March 2023. (Tr. 914-922). Stillwell's psychological evaluation occurred in May 2024. (Tr. 1259-1269). The relevant regulations require the ALJ to assess the persuasiveness of these medical opinions. At a minimum, the ALJ must address each opinion's supportability and consistency. 20 C.F.R. § 416.920c(a), (c). Supportability is whether the opinion is supported by objective medical evidence and by the source's own explanation of the opinion. Consistency is whether the opinion is consistent with the other medical evidence in the record. 20 C.F.R. § 416.920c(c).

Finding Hester's opinion "partially persuasive," the ALJ specifically addressed Hester's opinion that Banna could not complete work tasks in an acceptable timeframe due to pain issues. The ALJ reviewed the medical treatment and noted Hester's opinion was "widely inconsistent" with Banna's activities of daily living which included "driving independently, moving from Washington to Tennessee and then from Tennessee to Arkansas, caring for her disabled son (she is the representative payee for this son), walking, attending to her personal care and pets, managing her funds, paying bills, shopping, cleaning and performing chores." (Tr. 54).

The ALJ deemed Stillwell's opinion unpersuasive and supplied numerous

reasons. For example, the ALJ cited internal inconsistencies in Stillwell's opinion, such as the opinion that Banna had both a moderate and a marked limitation in her ability to initiate and perform a task she knew how to do. Stillwell assessed Banna with a 76 IQ, which the ALJ acknowledged. However, this score alone would not support Stillwell's findings, according to the ALJ. The ALJ also noted Stillwell found Banna required assistance in taking the test (the test was read to her) but other examinations in the record, including Hester's, did not suggest this level of limitation. The ALJ also cited Banna's ability to function independently as a factor in finding Stillwell's opinion unpersuasive.

The regulations demand the ALJ address the persuasiveness of the opinions of Hester and Stillwell, considering at least their supportability and consistency. The ALJ complied with the regulations, offering detailed and ample reasons for his conclusions. There is no error in this regard.

*ALJ failed to properly analyze Banna's subjective statements*

Banna contends the ALJ erred in considering her subjective statements. In particular, she claims her ability to perform sporadic daily activities was overstated. The relevant factors to be considered are found in SSR 16-3p and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or

> other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms . . . ; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *See* SSR 16-3p.

The ALJ is not required to explicitly discuss each relevant factor. *See Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

Here, the ALJ summarized Banna's activities of daily living as presented in her testimony and her June 2023 Function Report as follows: "[s]he spent time with others in person, on the telephone and via text and videochat daily. . . spent her day caring for her cats, watching television, listening to music, talking to friends and family, showering and completing chores. She stated she cared for her cats by feeding them and changing their litter box. She acknowledged she could attend to her personal care, prepare meals, clean her room and bathroom, use public transportation, shop in stores and online, and manage her finances." (Tr. 42). Elsewhere in the decision the ALJ noted Banna "functioned quite independently" and dated. (Tr. 53).

The ALJ listed the relevant facts from SSR 16-3p when considering subjective statements, then cited the medical evidence, the hearing testimony, and Banna's daily activities as factors in his assessment. The ALJ's analysis is supported by substantial evidence. The ALJ correctly cited Banna's lapse in

medical treatment from August 2021 until March 2023. Her hearing testimony also supported the ALJ's subjective statement conclusion. For example, Banna testified that her only medications at the time of the hearing were to address acid reflux and irritable bowel syndrome, and acetaminophen when needed, and that it had been more than a year since her last injection for her knee. Regarding her mental health, Banna stated she was taking no medication and had not had therapy recently. Even assuming the ALJ overstated Banna's daily activities, this is but one of the pertinent factors. And this alleged overstatement does not negate the overall analysis supporting the ALJ's assessment.

To the extent that there are minor items which may run counter to the ALJ's decision, this does not compel reversal of the ALJ's ruling:

> In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health & Human Serv.,* 879 F.2d 441, 444 (8th Cir.1989) (citing *Steadman v. S.E.C.,* 450 U.S. 91, 99, 101 S.Ct. 999, 1006, 67 L.Ed.2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin,* 349 F.3d at 555 (citing *Bates v. Chater,* 54 F.3d 529, 532 (8th Cir.1995)), or "review the factual record *de novo.*" *Roe v. Chater,* 92 F.3d 672, 675 (8th Cir.1996) (citing *Naber v. Shalala,* 22 F.3d 186, 188 (8th Cir.1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting *Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992), and citing *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989)); *accord Baldwin,* 349

F.3d at 555; *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000). *Rittenhouse v. Astrue*, 767 F. Supp. 2d 985, 1000–01 (N.D. Iowa 2011).

*Conclusion*

The essential question is whether the ALJ erred in assessing Banna's RFC. The ALJ included both exertional and non-exertional limitations to account for her numerous impairments. Substantial evidence supports the determinations reached by the ALJ. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is amply satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Bisignano is affirmed and Banna's complaint is dismissed with prejudice.

IT IS SO ORDERED this 16th day of September, 2026.



UNITED STATES MAGISTRATE JUDGE